## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

THERESA WINKEL,            )
                           )
       Plaintiff,        )
                           )
     v.                )    No.  9:19-cv-81508
                           )
HYUNDAI CAPITAL AMERICA, INC.,  )
*doing business as* Kia Motors Finance,  )
                           )
                           )
       Defendant.     )

## PLAINTIFF'S COMPLAINT

Plaintiff, THERESA WINKEL ("Plaintiff"), by and through her attorneys, Hormozdi Law Firm, LLC, alleges the following against Defendant, HYUNDAI CAPITAL AMERICA, INC., *doing business as* Kia Motors Finance ("Defendant"):

### INTRODUCTION

1.  Count I of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

2.  Count II of Plaintiff's Complaint is based on the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 ("FCCPA").

### JURISDICTION AND VENUE

3.  This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367.

4.  This court has federal question jurisdiction because this case arises out of violations of federal law.  47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

5.  This court has supplemental jurisdiction over the state law claim alleged herein pursuant to 28 U.S.C. § 1367(a) because it is "so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy."

6. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

7. Plaintiff is a natural person residing in the City of Boca Raton, Palm Beach County, State of Florida.

8. Plaintiff is a consumer as that term is defined by the FCCPA.

9. Plaintiff allegedly owes a debt as that term is defined by the FCCPA.

10. Defendant is a debt collector as that term is defined by the FCCPA.

11. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

12. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

13. Within the last two years, Defendant attempted to collect a consumer debt from Plaintiff.

14. Defendant is a California business corporation and national automobile dealer and financer with its headquarters in the City of Irvine, Orange County, State of California.

15. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

16. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

17. Defendant is attempting to collect a consumer debt from Plaintiff.

18. The alleged debt owed by Plaintiff arises from transactions for personal, family, and household purposes.

19. In or around January 2019, Defendant began calling Plaintiff on Plaintiff's cellular telephone, at 561-866-7894, in an attempt to collect the alleged debt.

20. Defendant calls Plaintiff from several telephone numbers, including 678-905-2890 and 714-369-1890, which are two of Defendant's telephone numbers.

21. In or around March 2019, Plaintiff's vehicle was totaled when she was struck by an uninsured driver.

22. Although Plaintiff's insurance paid for most of the vehicle's loan balance, Plaintiff was still stuck with an approximately $1,600 balance.

23. In or around March 2019, Plaintiff answered several of Defendant's collection calls:

24. During the above-referenced collection calls:

    a.  Plaintiff explained her financial situation that she could only pay $50 per month;

    b.  Defendant's collectors would not accept payment in $50 per month installments; and

    c.  Plaintiff told Defendant's collectors to stop calling her.

25. Two of Defendant's above-referenced collectors identified themselves as "Courtney" and "Dwayne".

26. Despite Plaintiff's request that Defendant stop calling him, Defendant continued to call Plaintiff unabated in an attempt to collect on the alleged debt.

27. Additionally, "Courtney" and "Dwayne" have left voicemail messages for Plaintiff in an

attempt to collect the alleged debt.

28. Defendant calls Plaintiff at an annoying and harassing rate.

29. Plaintiff has paid what she could toward the outstanding debt.

30. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

31. Defendant has never had Plaintiff's prior express consent to call his cellular telephone with an automatic telephone dialing system.

32. Even if Defendant somehow had Plaintiff's consent, such consent was revoked when Plaintiff told Defendant's collectors to stop calling him.

33. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

34. Within four (4) years of Plaintiff filing this Complaint, Defendant used an automatic telephone dialing system to call Plaintiff's cellular telephone.

35. When Plaintiff answered Defendant's calls, she was greeted with "dead air" whereby no person was on the other end of the line.  After several seconds, an agent was connected to the automated call then sought to speak with Plaintiff in an attempt to collect an alleged debt.

36. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

37. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

38. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

39. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

40. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

41. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

42. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple consumers.

43. Defendant's calls constitute calls that are not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

44. The dead air that the Plaintiff experienced on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's telephones would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

45. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

> a. Invading Plaintiff's privacy;
> b. Electronically intruding upon Plaintiff's seclusion;
> c. Intrusion into Plaintiff's use and enjoyment of her cellular telephone;
> d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of her cellular telephone; and
> e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I:
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

46. Defendant's conduct violated the TCPA by:

> a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice without consent in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, THERESA WINKEL, respectfully requests judgment be entered against Defendant, HYUNDAI CAPITAL AMERICA, INC., *doing business as* Kia Motors Finance for the following:

47. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

48. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C.

§ 227(b)(3)(C).

49. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

50. Any other relief that this Honorable Court deems appropriate.

**COUNT II:**
**DEFENDANT VIOLATED THE**
**FLORIDA CONSUMER COLLECTION PRACTICES ACT**

51. Plaintiff repeats and re-alleges paragraphs 1-45 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

52. Defendant violated the FCCPA based on the following:

   a. Defendant violated the § 559.72(7) of the FCCPA by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family when Defendant attempted to collect a debt from Plaintiff with a barrage of robocalls and even continued to do so after being told by Plaintiff to stop calling her.

WHEREFORE, Plaintiff, THERESA WINKEL, respectfully requests judgment be entered against Defendant, HYUNDAI CAPITAL AMERICA, INC., *doing business as* Kia Motors Finance for the following:

53. Statutory damages of $1,000 pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. § 559.77;

54. Costs and reasonable attorneys' fees pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. § 559.77;

55. Punitive damages and equitable relief, including enjoining Defendant from further violations, pursuant to Florida Consumer Collection Practices Act, Fla. Stat. § 559.77(2); and

56. Any other relief that this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED,

November 6, 2019                    By: /s/ Shireen Hormozdi

                                   Shireen Hormozdi
                                   Hormozdi Law Firm, LLC
                                   1770 Indian Trail Lilburn Road, Suite 175
                                   Norcross, GA 30093
                                   Tel: 678-395-7795
                                   Fax: 866-929-2434
                                   shireen@agrusslawfirm.com
                                   shireen@norcrosslawfirm.com
                                   Attorney for Plaintiff